Benefactor B. & L. Assn., Appellant, *v.* Latta, Def. and Girard Trust Co., Garnishee.

Argued April 29, 1932.

Before Trexler, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*L. Halpern Miller,* for appellant, cited: Neal's Appeal, 104 Pa. 214; Ogden's Appeal, 70 Pa. 501; King's Estate, 147 Pa. 410.

*William T. Connor,* and with him *Charles Myers, Edgar C. Vandyke,* and *John R. K. Scott,* for appellee, cited: Keyser v. Mitchell, 67 Pa. 473; Winthrop Company v. Clinton, 196 Pa. 477; Morgan's Estate (No. 1), 223 Pa. 228.

OPINION BY CUNNINGHAM, J., July 14, 1932:

The question involved upon this appeal is whether certain trust funds in the hands of Girard Trust Company are subject to attachment at the suit of a judgment creditor of the beneficiary. It arose out of these circumstances.

The plaintiff building and loan association has a judgment against Thomas L. Latta and his wife, Florence Hood Latta; it issued an attachment execution thereon in which the Girard Trust Company was named as garnishee. The answers of the garnishee

were to the effect that it never had any business transactions with Thomas L. Latta but Florence Hood Latta had a deposit account in its banking department in which there was a balance of $65.34; that, in addition to this amount, it had in its possession, as the substituted trustee under the will of Samuel Hood, the grandfather of Florence Hood Latta, the sum of $28.10 received by it as income upon a certain fund bequeathed upon the trusts set forth therein, which income it intended, under the discretionary power vested in it, to apply to the maintenance and support of Florence Hood Latta; and that it had been advised that neither this income, nor the corpus of the fund, is subject to the attachment.

Further material facts appearing of record are that the will of Samuel Hood was dated May 21, 1863, and the last codicil thereto June 11, 1867; that his granddaughter, Florence Hood, was less than nine years of age when the will was executed; that the testator died August 15, 1878; and that Florence Hood was not married until nearly fifteen years after her grandfather's death and now has one son and two daughters.

By the sixth paragraph of his will, Samuel Hood placed the undivided half of the residue and remainder of his estate in trust for various beneficiaries, including Florence Hood. The portion of the paragraph here involved reads:

"......and as to the other half of the residue of said moiety being the share of said Florence Hood in trust to keep the same safely and securely invested and pay the rents interest and income of the same over to her for her own sole and separate use or at the option of said Trustee and whoever shall succeed him in said trust pay and appropriate the same in and about her maintenance and support and that of her children free clear and discharged from the debts or engagements of any husband of my said granddaughter

and not liable to anticipation and from and after her decease then in trust to pay divide and distribute the same to and among such of her children as shall then be living and the issue of such as shall be deceased their Heirs Executors Administrators and Assigns in equal parts and shares such issue to take only the part or share to which his her or their deceased parent would have been entitled if living and upon this further trust in case she shall die leaving no children or issue surviving to pay and divide the same to and among such persons and in such way as the said Florence Hood by any last Will and Testament or writing in the nature thereof executed by her in the presence of two or more credible witnesses shall direct limit and appoint.''

Plaintiff's rule for judgment against the garnishee for want of sufficient answers was discharged in an able and comprehensive opinion by Smith, P. J., and the case came to trial before him and a jury. By that time the income in the hands of the garnishee amounted to $1110.72 and it was stipulated that the corpus was of the face value of $32,807.52.

The trial judge directed the jury to return a verdict in favor of the plaintiff for $65.34, (being the above mentioned balance in the deposit account of Florence Hood Latta) and in favor of Thomas L. Latta, generally, and in favor of Girard Trust Company as to all funds in its hands as substituted trustee. Such instructions were given because the trial judge held, for the reasons stated at length in his opinion discharging plaintiff's rule for judgment, that: ''Samuel Hood in his last will created a spendthrift trust in favor of his granddaughter Florence Hood (Latta) for her education, maintenance and support, and the fund cannot be anticipated nor attached for an indebtedness incurred by her upon which judgment has been entered in this case.''

Plaintiff's motion for judgment n. o. v. was denied and it now appeals from the judgment for $65.34 entered upon the verdict.

Appellant's judgment is for $12,088.59 and it contends on this appeal that it should have been permitted to attach not only the income but also the principal of the trust fund; its contention is based on these propositions. The testator attempted to create a sole and separate use trust in favor of his granddaughter, but this was invalid because of the fact that she was under nine years of age at the time the will was executed and did not marry until approximately fifteen years after the death of the testator; the trust was created as a sole and separate use trust only, and since this purpose was invalid it failed altogether, and Florence Hood Latta became entitled to the legal estate unencumbered by any trusts or restrictions; and finally, as, in making the gift over, the words used by the testator were equivalent to "heirs of the body," the rule in Shelley's case and the Act of April 27, 1855, P. L. 368, became operative and she took a fee.

Appellant's first proposition is conceded both by the court below and by the appellees. It is settled law that a sole and separate use trust cannot be created for a woman unless she is married or in immediate contemplation of marriage: Neale's Appeal, 104 Pa. 214; Yarnall's Appeal, 70 Pa. 335; Ogden's Appeal, 70 Pa. 501; Dodson v. Ball, 60 Pa. 492.

The difficulty with appellant's position, however, is that, as the court below has convincingly demonstrated, protection from a possibly profligate husband was not the only purpose for which the trust was created; there was also a spendthrift provision which, in our opinion, exempts the trust funds from attachment by creditors of the beneficiary.

This conclusion follows from an analysis of the provisions quoted. The testator not only provided that

the income be paid to his granddaughter "for her own sole and separate use......free, clear and discharged from the debts or engagements of any husband," but also provided that it shall not be "liable to anticipation," and, as is even more important, authorized the trustee at its "option" to pay and appropriate the income "in and about her maintenance and support and that of her children." It is, therefore, obvious that the testator had a purpose beyond that of creating a sole and separate use trust. The object of such a trust is to provide an income for a wife, the principal of which cannot be diverted to pay the debts of her husband. If this had been the only purpose of the testator, he would naturally have stopped after using the words first quoted. We cannot agree with appellant in its contention that the succeeding words should be considered and construed as merely amplifying the sole and separate use trust; to do so would render them useless and deprive them of their usual and ordinary significance.

It is not essential that a spendthrift trust contain words providing specifically that the income shall not be subject to the debts of the beneficiary, if this intent is made clear by the words creating the trust. In Winthrop Co. v. Clinton, 196 Pa. 472, testator gave his estate to his executors to pay the net income to his son "for his use and support for and during all the term of his natural life, and not to be liable to' anticipation." Our Supreme Court held that the necessary meaning of these words was that the son should be constantly provided during his entire life with the means to obtain those things which were necessary to his livelihood and concluded this must necessarily mean that his creditors should not be permitted to reach the fund. We quote from the opinion at page 477: "If the income is to be paid to the cestui que trust for his personal, physical support and mainte-

nance, it is manifest that if it is made subject to the claims of creditors, the whole plan and purpose of the testator is frustrated. It is too clear for argument that he could not possibly have intended that the means of subsistence which he had thus provided for his son, should be subject to seizure by his creditor, thus depriving not only himself, but his wife and family of the necessary means of living. . . . . . . .In conclusion, it is only necessary to say that it would be utterly impossible to furnish continuing 'support' for the whole life of a cestui que trust, out of an annual income fund, if that fund is to be held subject to the claims of creditors who may at any time take it from him by means of adversary proceedings. It is therefore a necessary inference that the testator had no such intent in this case, and hence it follows that his purpose was to establish a spendthrift trust in favor of his son.''

In Keyser v. Mitchell, 67 Pa. 473, testator directed the trustee: ''to pay the said rent or income, or so much thereof as the trustee may think proper and' expedient, under all the circumstances of the case, to and for the maintenance and support of my son Charles, during all the term of his natural life, with the intent and purpose that the said trustee may either pay the said income, or such portion thereof as he may think proper, into the hands of my said son, or disburse the same in such way as to the said trustee may seem best for his comfortable support and maintenance, such payments and disbursements to be at all times at the sole and absolute discretion of the said trustee.'' It was held that these words created a spendthrift trust and that any other construction would defeat the exercise of discretion by the trustee. See also Kelley's Estate (No. 1), 253 Pa. 466.

We think the same conclusion should be reached here. The trustee is given the option to provide maintenance

and support not only for Florence Hood Latta, but for her children as well; there is no indication that the trust is to cease upon her discoverture; on the contrary, it is to continue for the duration of her life. Furthermore, the option given the trustee is put in the alternative. The reasonable conclusion is that the testator intended not only to put the fund beyond the reach of her husband, but also to provide, at the option of the trustee, a satisfactory income for the support of herself and children during her lifetime. Manifestly, this purpose would be defeated if the fund could be attached by her creditors. By reason of the discretion vested in the trustee, the fund is protected as securely as if there had been a direct prohibition against assignment or attachment.

The cases cited by appellant are ones in which an absolute legal estate came into existence, as soon as the attempt to create a sole and separate use trust was declared invalid. Since they are distinguishable on this ground alone, it is unnecessary to analyze them. The fact that the testator failed in his effort to create a sole and separate use trust, does not invalidate the trust if it should be supported for other valid purposes: Ingersoll's Appeal, 86 Pa. 240. The conclusion we have reached renders it unnecessary to discuss appellant's contention that Florence Hood Latta took a fee in the estate, because the rule in Shelley's case does not apply where the gift to the life tenant is of an equitable estate and that to the remaindermen is a legal one: Hurd's Estate, 305 Pa. 394, and cases there cited; nor does it apply to estates in personalty.

This case was properly disposed of in the court below and we, accordingly, dismiss all the assignments.

Appeal dismissed at costs of appellant.