## Gibson Estate

630

*James S. Crawford, 3rd,* for accountant.
*Fred C. Houston, Jr.,* for exceptants.
*John G. Frazer, Jr.,* for legatees.

ADJUDICATION

BOYLE, P. J., April 19, 1966.—The question in the case at bar is whether there is an unlawful accumulation of income in the trusts created under paragraphs 8 and 9 of the will of Addison H. Gibson, deceased. If the accumulation is lawful, the unexpended income in each trust goes to the estate of the deceased life tenant. If the accumulation is unlawful, it goes to the trustees of the residuary estate, designated as the Addison H. Gibson Foundation, for charitable purposes.

The Attorney General of the Commonwealth of Pennsylvania has been given due notice of this audit of the final accounts of the trustee and the questions involved.

The court must determine the manner of distribution of accumulations of income in the amount of $4,-784.93 under the trust created for Annie A. McChesney and Martha G. McChesney under paragraph 8 of decedent's will. The accumulation occurred during the life of Martha G. McChesney, the surviving life tenant.

A similar question involves $2,316.74 of income accumulated under the trust created for the benefit of Marie J. Gibson under paragraph 9 of the will of decedent.

The trustees of the foundation contend that the directions of the will violate the statute against accumulations, which is the Act of April 18, 1853, P. L. 503, and that the court should order the accumulated income distributed to them.

Decedent died April 18, 1936, and the provisions of his will are subject to the Act of April 18, 1853, P. L. 503.

Paragraph 8 of the will provides:

"I authorize and direct my executors to set aside the sum of One Hundred Thousand Dollars ($100,000), which they shall administer as trustees and pay the net income thereof in quarterly payments, if convenient to do so, to my said sister, Annie A. McChesney, as long as she shall live. After the death of my said sister, I direct my trustees to pay to my niece, Martha G. McChesney, as long as she shall live, the whole or such part of the income from said trust fund as shall, in the sole judgment of my trustees, be necessary to supplement other income of my said niece and enable her to live in the manner to which she was accustomed prior to my death. Upon the death of both of said beneficiaries, that is, Annie A. McChesney and Martha G. McChesney, I direct that said trust shall cease with respect to said fund and the corpus of said fund shall be added equally to the trusts herein provided in Paragraph 14 hereof for my residuary estate".

Paragraph 9 of the will provides:

"I direct my executors to set aside the sum of Forty Thousand Dollars ($40,000) as a trust fund and administer the same as trustees, and out of the income thereof to pay the sum of One Hundred Dollars ($100.00) per month to my niece, Marie J. Gibson, as long as she shall live. Upon the death of said niece, I direct that said trust shall cease with respect to said fund and the corpus of said fund shall be added equally to the trusts herein provided in Paragraph 14 hereof for my residuary estate".

Testator disposes of unexpended income as follows, in paragraph 12 of his will:

"I . . . authorize and direct my trustees, in their sole discretion, to use any unexpended income, or the principal if required, of the trusts above created in Paragraphs 8 to 10 inclusive, to take care of any emergency, accident, illness or death of any of the bene-

ficiaries named in said paragraphs, if other funds for the expenses of such emergency or illness are not otherwise available to such beneficiaries".

Paragraphs 8 and 9 of the will do not dispose specifically of income not expended during the term of the trust. Only corpus is added to the trusts under paragraph 14.

The Act of April 18, 1853, P. L. 503, sec. 9, provides: "[N]o person . . . shall, after the passing of this act, by any . . . will . . . dispose of any real or personal property, so and in such manner that the rents, issues, interest, or profits thereof, shall be wholly or partially accumulated for any longer term than the life . . . of any such . . . testator, and the term of twenty-one years from the death of any such . . . testator, that is to say, only after such decease during the minority or respective minorities, . . . of any person or persons, who, under the uses or trusts of the deed, will, or other assurance directing such accumulation, would, for the time being, if of full age, be entitled unto the . . . [income] . . . so directed to accumulate . . . ."

In order to find a violation of the Act of 1853, it must be found that testator expressly or impliedly directed an accumulation of income and its capitalization in such a manner as not to fall within an exception to the statute.

Such unlawful intent is not present when testator's provision to accumulate income is in anticipation of a possible future decrease in income earned or to provide for emergencies such as sickness: Spring's Estate, 216 Pa. 529, 534-35; Hibbs Estate, 143 Pa. 217, 219, 224-225.

Such a provision for a contingent fund is set forth in paragraph 12 of the instant will.

Nor is there such unlawful intent where, in fact, all the income is given the life tenant, even though the trustee may or may not have discretion to determine

the amount to be paid the income beneficiary and where there is no gift over of unexpended income: McManus Estate, 361 Pa. 122, 123-25; Sterrett's Estate, 300 Pa. 116, 120-21; Everhart's Estate, 296 Pa. 94, 97-99.

The crux of the question is whether or not the life tenant was given all income with the discretion in the trustee merely to decide how much will be expended at a given time.

Martha G. McChesney was given the whole or such part of income of the trust as the trustee determines is necessary to supplement other income payable to her. It is clear that Martha G. McChesney was given "all income" by the use of the words, "whole . . . of the income", but the payment of this "whole" might be postponed until a pressing need arose. No attempt was made to direct a capitalization of excess income; nor was there any gift over of accumulated income, both of which further indicate a gift of all the income of her trust to Martha G. McChesney.

Another indication that Martha G. McChesney's gift was of all the income of the trust established for her is the fact that all the income or even principal could be used for an emergency, such as accident, illness, or death. There is a strong intent from this that income was vested in her because it might be used by her estate and, if not sufficient, principal might be invaded.

The same may be found as to the gift of Marie J. Gibson, which is very similar except that it is in the form of an annuity which equals about what the principal of the trust for Marie J. Gibson would earn during the life of the trust. The fact that excess income over the amount necessary to pay the annuity might be retained does not show an intent to provide for an accumulation in violation of the statute, because: (1) there is a provision for payment of income almost equal to the maximum amount of income reasonable to be produced by the trust, (2) a provision for the use of prin-

cipal in the case of emergencies where income is not sufficient, (3) no capitalization of the augmentation, and (4) no intent to favor unknown remaindermen over the income beneficiary. McKeown Trust, 384 Pa. 79, is very like the case at bar. There, Sara Jane McKeown created an irrevocable inter vivos trust, with herself as primary beneficiary. The trust agreement provided, inter alia, as follows:

"Out of the income of the Trust Fund, and, to the extent that it is necessary, out of the principal thereof, the Trustee shall pay the sum of One hundred fifty (150.00) Dollars monthly to the Donor for and during the term of her natural life, or until the Trust Fund is by such payments entirely depleted. The Trustee in its sole discretion may use such additional amounts of the principal as it deems necessary or advisable to meet unusual expenses incurred by the Donor by reason of illness or other misfortune".

The trust agreement further provided for the distribution to specified persons of "the remaining corpus of the Trust Fund". The trustee distributed to the life beneficiary income in excess of the $1,800 per year, which was the total of the monthly payments specified. The guardian ad litem argued that it was settlor's implied intent to have her trustee accumulate and capitalize, as trust corpus, the income from the trust in excess of $150 per month, and that accumulation during the life of settlor would not violate the statute against accumulations. The lower court agreed, but this result was reversed by the Supreme Court on appeal by settlor, holding that settlor was entitled to receive the entire income from the trust.

The language of the Supreme Court in McKeown, supra, at pages 82-83, is applicable to the case at bar:

"The important question here is whether the trust agreement implies an intent on the part of the settlor that the income in excess of $150 a month should be

accumulated and capitalized as a part of the corpus of the trust. We fail to find any such intent.

"If the settlor intended that the trustee should accumulate and capitalize trust income in excess of $1,800 a year, manifestly she left it entirely to inference. It is certain that she did not expressly so direct. The question, then, is whether the implications of the trust agreement, particularly in the light of the undisputed facts and circumstances attending its execution, warrant any such inference.

"There is no basis for inferring that, at the time of the creation of the trust, disposition of an excess of income over the $150 monthly payments was in the settlor's contemplation. The securities which were to comprise the corpus were not then producing much more than $1,800 net a year".

At page 83, the court observes that settlor provided for distribution after her death of " 'the remaining corpus'—not a corpus augmented by accumulations of income". As in the instant case, the trust instrument provided for monthly payments "out of income". At page 84, the Supreme Court minimized the importance of this language, and held that this referred to " 'all the income' ".

The Supreme Court noted, also at page 84, that:

". . . the guardian and the court inferred that the settlor intended that the income of the trust in excess of $150 a month was to be accumulated and capitalized as a part of corpus during the settlor's lifetime. A more rational and realistic inference is that if the settlor had so intended, she would have expressly so provided".

In the instant case, as in the McKeown case, supra, the sole intention of testator was that the income should be applied, ultimately, to the life beneficiaries. As in McKeown, supra, the income from the trust funds created by paragraphs 8 and 9 vested in Martha G. McChesney and Marie J. Gibson when it accrued.

Testator showed his solicitude for his sister and his nieces in the overall pattern of his will. His residuary trust was set up for charitable purposes to take effect only after the needs of his sister and nieces were taken care of. It is unlikely that he intended unknown, unrelated beneficiaries to take precedence over those for whom he so carefully provided.

The life tenants of the trusts created by paragraphs 8 and 9 of the will had a vested interest in all of the income earned during the terms of the trusts. The unexpended income of each trust will be awarded to the estate of the deceased life beneficiary thereof. A decree will be entered accordingly.

OPINION SUR EXCEPTIONS TO ADJUDICATION

BOYLE, P. J., October 13, 1966.—A claim for the accumulated income in the trust for Martha M. McChesney was not presented at the audit of trustees' account by her personal representative or by any party in interest in her estate. The question was submitted by counsel for trustees as one to be determined at the audit. The statement of counsel in the testimony is, in part:

"We gave notice of this audit to counsel representing the executor of the estate of the deceased life tenant, in Oak Park, Illinois. I had a reply from him that he didn't intend to be present at this audit or represented here, and was willing to submit the issue in this matter to the Court".

Although there is authority for sustaining an allowance in favor of the estate of Martha G. McChesney, there is a substantial dubiety involved if the case is measured by technical rules of law. Although the statute against accumulations of April 18, 1853, P. L. 503, has been repealed, it applies here because the creation of the trust antedates the repeal. The opinion of Judge Penrose in the leading case, White's Estate, 8 Dist. R. 33, would support a finding that there is present here

a violation of the statute against accumulations. In these circumstances, the court believes that the exceptions filed by trustees to the decree of the auditing judge entered at no. 1071-A of 1940 on April 19, 1966, should be sustained.

The exceptions filed to the decree entered April 19, 1966, at no. 1071-C, awarding accumulated income to the estate of Marie J. Gibson, deceased, will be dismissed for the reasons given in the opinion of the auditing judge. Final decree will be entered in accordance with this opinion.